**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-03310-REB

MARK A CROSS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER REVERSING DISABILITY
DECISION AND REMANDING TO COMMISSIONER**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1], filed December 19, 2012, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of low back pain associated with lumbar spondylolisthesis and an affective disorder. After his application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on October 4, 2011. At the time of the hearing, plaintiff was 35 years old. He has past relevant work experience as a security guard,

group home caregiver, delivery driver, waiter, EMT, and assistant restaurant manager. He has not engaged in substantial gainful activity since May 26, 2007, his alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to supplemental security income benefits. Although the evidence established that plaintiff suffered from severe impairments, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform light work with postural and nonexertional limitations. Based on this determination, the ALJ found that plaintiff could return to his past work as a security guard. Alternatively, the ALJ concluded that there were other jobs existing in significant numbers in the national and local economies that he could perform. The ALJ therefore found plaintiff not disabled at both step four and step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both him previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518,

1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four

steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

All plaintiff's assignments of error stem from his essential argument that the ALJ

erred in her consideration of the opinion of his treating physician, Dr. Matthew Burkley. I agree, and therefore reverse.[1]

Plaintiff suffers from congenital spondylolisthesis, "a condition in which one of the bones of the spine (vertebrae) slips out of place onto the vertebra below it," which may cause pain if the bone impinges on a nerve. Cleveland Clinic, *Diseases & Conditions, Spondylolisthesis* (available at http://my.clevelandclinic.org/disorders/back_pain/hic_spondylolisthesis.aspx) (last accessed March 11, 2014). He first saw Dr. Burkley in May 30, 2007, for reports of increased back pain after a patient at the care facility at which he was working assaulted him.[2] Dr. Burkley noted pain to palpation of the left lumbar area, but other objective signs were normal. Plaintiff was given Vicodin for pain and taken off work for ten days. (Tr. 362.) On June 8, 2007, he was released to modified duty (Tr. 361), but despite some progress in physical therapy, he was taken off work again three weeks later after reporting that he was "in pain the majority of the time" even on light duty (Tr. 360). Thereafter, although plaintiff reported that he was doing "reasonably well as long as he has no prolonged standing or lifting" (Tr. 359), and had "good pain relief with the vicodin" (Tr. 358), Dr. Burkley noted that his "[p]ain control remains suboptimal" (Tr. 356) and continued to restrict him from all work through

---

[1] I address only so much of plaintiff's arguments as are sufficient to require reversal. As to any other matter raised in this appeal, I express no opinion. **See Watkins v. Barnhart**, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand."). **Accord Gorringe v. Astrue**, 898 F.Supp.2d 1220, 1225 (D. Colo. 2012); **Barthel, ex rel. T.M.B. v. Astrue**, 2009 WL 2476601 at *10 (W.D. Okla. Aug. 11, 2009).

[2] Prior to that date, plaintiff's pain related to this condition was characterized as "chronic, moderate and nonspecific." He had experienced some improvement with physical therapy just prior to this incident. (Tr. 308.)

November 2007.

Plaintiff returned to light duty work two days a week on November 22, 2007. (Tr. 354.) He reported that he "had lots of soreness from this but would like to continue. Much of his soreness is related to long drive to and from work." (Tr. 353.) One week later, however, Dr. Burkley again found that plaintiff was not fit to return to work due to his level of pain. (Tr. 352.) Plaintiff remained off work throughout 2008. He also began taking Effexor to treat symptoms of depression related to his chronic pain. When conservative treatments ultimately failed to relieve plaintiff's symptoms, he underwent an L5-S1 decompression and fusion in January 2009. (Tr. 221-228.)

Dr. Burkley released plaintiff to sedentary work four hours per day in March 2009. (Tr. 304.) Nevertheless, plaintiff experienced increased pain even on this reduced scheduled on days when he also went to physical therapy. Dr. Burkley therefore recommended he work only two, four-hour days per week. (Tr. 303.) Over the ensuing months, Dr. Burkley slowly increased plaintiff's work hours, eventually releasing him in August 2009 to work six hours a day and to work with patients. (Tr. 296.) Soon thereafter, however, plaintiff reported that he was "unable to work more than a few hours without pain and stiffness." (Tr. 295.) He was terminated from his job the following May. (Tr. 188.)

In July 2010, Dr. Burkley issued an opinion suggesting that plaintiff could sit for up to 30 minutes at a time for two to four hours a day, stand for up to 15 minutes at a time up to two to four hours a day, and walk for one to two hours in an eight-hour workday. He stated that plaintiff would need to alternate sitting and standing, that he could lift up to 10 pounds occasionally, and that he had other manipulative and postural

restrictions. He also suggested that plaintiff would sometimes need to lie down at unpredictable times during the day and that his symptoms would frequently be severe enough to prevent appropriate attention and concentration. (Tr. 288-292.) Plaintiff contends that the ALJ erred in assigning this opinion "limited weight." (*See* Tr. 18.)

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record" and cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). Good cause may be found when a treating source opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Yet even when a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.972." **Social Security Ruling** 96-2p, 1996 WL 374188 at *4 (SSA July 2, 1996). *See also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).[3]

---

[3] These factors include:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;
4. the support of the physician's opinion afforded by the medical evidence of record;
5. the consistency of the opinion with the record as a whole; and
6. the specialization of the treating physician.

20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ, characterizing Dr. Burkley's assessment as a "check-form opinion,"[4] found that it was unsupported by objective findings, noting that Dr. Burkley's treatment notes from visits just prior to and just after the date of his opinion showed no physical examination and limited treatment for pain.  (Tr. 18.)  This is an extremely cramped and miserly reading of the evidence of record.  More particularly, it fails to adequately account for Dr. Burkley's longitudinal perspective on plaintiff's multiple and protracted treatment history.  Indeed, the reason treating sources are generally entitled to greater weight than other sources is because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations."  20 C.F.R. § 404.1527(c)(2).

Contrary to the ALJ's suggestion, the record shows that Dr. Burkley had treated plaintiff regularly for a period of more than three years at the time he issued his opinion.  Despite resort to multiple treatment modalities and several attempts to return to work, plaintiff was unable to achieve sufficient relief from conservative treatment.  Although he therefore opted for surgery, this too ultimately was less than entirely successful in resolving his symptoms.  The ALJ should have considered the entire course of plaintiff's treatment with Dr. Burkley to determine whether his opinion was adequately supported by the medical and other evidence of record.  This in itself constitutes reversible error.

---

[4] The ALJ's subtly derisive reference to Dr. Burkley's use of a check box form to express his opinion provides no basis in itself for assigning less weight to the opinion of a treating source.  *See Andersen v. Astrue*, 2009 WL 886237 at * 6-7 (10th Cir. Apr. 3, 2009); *Angster v. Astrue*, 703 F.Supp.2d 1219, 1228 n.2 (D. Colo. 2010).

Moreover, it appears to this court that the ALJ was influenced in her assessment of Dr. Burkley's opinions by her own disbelief of plaintiff's subjective reports of pain. (*See* Tr. 18 (noting plaintiff's alleged failure to comply with treatment).)  To the extent she did so, this too was error.  It is improper for the ALJ to discredit a treating source opinion merely because it relies on the claimant's subjective complaints regarding his symptoms.[5]  The ALJ may reject a medical opinion "only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citation and internal quotations marks omitted).  *See also Orender v. Barnhart*, 2002 WL 1747501 at *6 (D. Kan. July 16, 2002) (citing *Nieto v. Heckler*, 750 F.2d 59, 61-62 (10th Cir. 1984)) ("A medical opinion based on a physician's evaluation of the patient's medical history, observations of the patient, and an evaluation of the credibility of the patient's subjective complaints of pain, is medical evidence supporting a claim of disabling pain, even if objective test results do not fully substantiate the claim.").[6]

---

[5]  This finding too is somewhat suspect.  For example, the ALJ discredited plaintiff because she concluded that he was not compliant with treatment, insofar as he did not take medications prescribed for him and refused to wear a back brace.  (Tr. 18.)  However, it appears to this court that the evidence of record could be read to suggest that plaintiff declined to take the powerful narcotic medications prescribed for his back pain because of side effects.  (*See* Tr. 55, 358.)  Indeed, plaintiff testified that Dr. Burkley would not longer prescribe him medication (Tr. 48) and reported that though he used medical marijuana, it did not adequately control his pain either (Tr. 46, 293).  Moreover, the ALJ's suggestion that plaintiff "admitted that he did not like to take and would not take his medications" (Tr. 18) plainly misrepresents plaintiff's testimony, which more properly read, suggests instead that plaintiff's multiple medications had resulted in "really bad acid reflux" and that he hadn't liked to take too much medication *prior* to the onset of his alleged disability (Tr. 55).  Likewise, the ALJ's reference to the fact that plaintiff does not wear his back brace does not present a truthful picture of his testimony either.  (*See* Tr. 55 (noting that back brace does not help).)

[6]  Although the opinions of consultative examiners Dr. Todd Peters and Dr. Velma Campbell may provide some support in this regard (*see* Tr. 330-332, 238-241), the ALJ did not specifically compare these assessments with Dr. Burkley's, or even note the ways in which the opinions were consistent or contradicted with one another.  Such a comparison, with appropriate deference given to the treating physician statements, should be undertaken on remand.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215

For these reasons, I find that remand is warranted.[7]

**THEREFORE IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2. That this case is **REMANDED** to the ALJ, who is directed to

    a.    Reweigh the various medical opinions of record, considering particularly whether those of plaintiff's treating source may be entitled to controlling weight, and, if not, articulating specific, legitimate reasons tied to the evidence of record and guided by the factors enumerated in 20 C.F.R. § 404.1527(c) for the weight ultimately assigned to those opinions as well as all others of record;

    b.    Reevaulate plaintiff's residual functional capacity in light of her determinations in paragraph 2(a) above, articulating specific reasons based on the evidence of record supporting the various capacities found;

    c.    Recontact any treating, examining, or reviewing sources for further clarification of their findings, seek the testimony of additional medical or vocational experts, order additional consultative or other examinations, or otherwise further develop the record as she

---

(10th Cir. 2004); ***Davis v. Astrue***, 2010 WL 3835828 at *6 (D. Colo. Sept. 23, 2010).  In addition, the ALJ would be well advised to provide a more explicit articulation of how her residual functional capacity assessment jibes with the various medical opinions of record.  ***See* Social Security Ruling 96-8p**, 1996 WL 374184 at *7 (SSA July 2, 1996) ("[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

[7] By this decision, I do not find or imply that plaintiff is or should be found to be disabled.

>> deems necessary;
>
> d. Reevaluate her determinations at steps 4 and 5 of the sequential evaluation; and
>
> e. Reassess the disability determination; and

3. That plaintiff is **AWARDED** his costs, to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1).

Dated March 12, 2014, at Denver, Colorado.

**BY THE COURT:**

*/s/ Bob Blackburn*
Robert E. Blackburn
United States District Judge